UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES LALIME, *et al.*,

        Plaintiffs,

    v.

TRAVCO INSURANCE COMPANY,

        Defendant.

23-CV-122-LJV
DECISION & ORDER

---

On September 16, 2022, the plaintiffs, James and Judy Lalime, commenced this action in New York State Supreme Court, Erie County. Docket Item 1-2. They assert claims for breach of contract related to an insurance policy issued by the defendant, TravCo Insurance Company ("Travelers"). Docket Items 10 and 12. Travelers was served in January 2023, and it timely removed the case to this Court based on diversity of citizenship. Docket Item 1.

After Travelers moved to dismiss the complaint in part, Docket Item 11, the Lalimes amended the complaint, Docket Item 12. Travelers then moved to dismiss the amended complaint in part, Docket Item 15, and the Lalimes responded to the second motion to dismiss and moved to amend the complaint a second time, Docket Item 16; Docket Item 16-4; *see* Docket Item 16-3 (redlined copy of proposed second amended complaint). On May 30, 2023, Travelers replied in support of its second motion to dismiss and responded to the motion to amend, Docket Item 17. The Lalimes did not reply in support of their motion to amend, and the time to do so has now expired. *See* Loc. R. Civ. P. 7(b)(2).

For the reasons that follow, Travelers' second motion to dismiss is granted in part and denied in part, and the Lalimes' motion to amend is granted in part and denied in part. Travelers' first motion to dismiss is denied as moot.

## **BACKGROUND**[1]

The Lalimes own a home in East Amherst, New York, Docket Item 12 at ¶ 4, that was insured under a homeowners policy issued by Travelers, *id.* at ¶ 12; *see* Docket Item 15-4. The policy covered the period from May 19, 2020, to May 19, 2021, Docket Item 12 at ¶ 14; Docket Item 15-4 at 2, and provided insurance coverage of up to $588,000 for damage to the "dwelling," up to $411,600 for damage to "personal property," and up to $176,440 for "loss of use," Docket Item 15-4 at 2 (capitalization omitted); *see* Docket Item 12 at ¶¶ 26, 46, 65.

On or about September 18, 2020, the Lalimes' property was damaged by a "collapse." Docket Item 12 at ¶ 17. The damage to the dwelling and the Lalimes' personal property exceeded the policy limits, as did the loss of use damages the Lalimes suffered as a result of the collapse. *Id.* at ¶¶ 25, 27, 45, 47, 66-67.

After the collapse, the Lalimes "promptly reported" the damage—which was "covered under the [p]olicy"—to Travelers. *Id.* at ¶¶ 19-20, 29, 49, 66. The Lalimes "timely complied with all requests made by [Travelers] and satisfied all conditions

---

[1] On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). In deciding the motion, the court may consider any written documents that are attached to the complaint, incorporated by reference, or integral to it. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). The following facts are taken from the first amended complaint, Docket Item 12, and the insurance policy it references, Docket Item 15-4.

necessary to coverage under policy," *id.* at ¶ 22, including giving Travelers the opportunity to inspect the property, *id.* at ¶ 21. "Nonetheless"—and despite Travelers' "duty" to provide coverage, *id.* at ¶¶ 30, 48, 64—Travelers breached the policy and "failed and refused to provide [the] coverage" to which the Lalimes were entitled, *id.* at ¶¶ 23, 31, 33, 50, 52, 68, 70.

The Lalimes' amended complaint asserts three breach of contract claims: one each for damage to their dwelling, *id.* at ¶ 37, damage to their personal property, *id.* at ¶ 56, and damage resulting from loss of use of their home, *id.* at ¶ 74. And they say that Travelers' conduct entitles them to "extra-contractual consequential damages" for each claim as well. *Id.* at ¶¶ 34, 53, 71.

## **LEGAL PRINCIPLES**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## **DISCUSSION**

Travelers has moved to dismiss the Lalimes' "claims and demands for consequential damages." Docket Item 15-7. The Lalimes respond that Travelers'

3

motion to dismiss should be denied and, in the alternative, that they should be granted leave to amend their complaint a second time.  Docket Item 16-4.  For the reasons that follow, one of the Lalimes' consequential damages claims may proceed but the others are dismissed.

I.   CONSEQUENTIAL DAMAGES STANDARD

In a breach of contract lawsuit, damages generally are limited to losses that result from the defendant's failure to perform under the contract.  *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85 (2d Cir. 2021) ("In New York, it is well established that the non-breaching party may recover 'general damages which are the natural and probable consequence of the breach.'" (quoting *Kenford Co. v. County of Erie*, N.Y.2d 312, 319, 537 N.E.2d 176, 177 (1989))).  In other words, the plaintiff is entitled to be "made whole" only for the loss directly caused by the defendant's breach.  *See id.* at 85-86.  But "'[s]pecial' or 'consequential' damages . . . seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach."  *Schonfeld v. Hilliard*, 218 F.3d 164, 176 (2d Cir. 2000).

The parties spill much ink debating the nuances of what a plaintiff must show to recover consequential damages under New York law.  *See* Docket Item 15-7; Docket Item 16-4; Docket Item 17.  Indeed, "[t]here has been some disagreement among courts and commentators" about the appropriate standard.  *Scottsdale Ins. Co. v. McGrath*, 549 F. Supp. 3d 334, 352-53 (S.D.N.Y. 2021) (collecting cases and other sources).  As it must, this Court applies the law set forth by New York's highest court, the New York Court of Appeals, in two recent cases: *Bi-Economy Market, Inc. v. Harleysville*

4

*Insurance Co. of New York*, 10 N.Y.3d 187, 886 N.E.2d 127 (2008), and *Panasia Estates, Inc. v. Hudson Insurance Co.*, 10 N.Y.3d 200, 886 N.E.2d 135 (2008).

Before *Bi-Economy* and *Panasia*, "insureds suing in New York for an insurer's breach of contract in failing to pay a claim were limited to recovery within the policy limits of the policy which they purchased." *Scottsdale*, 549 F. Supp. 3d at 349 (citation omitted); *see id.* at 350 (explaining that generally, "[t]he law does not penalize an insurer for its mistaken judgment regarding the coverage of its policy by exposing it to a greater loss than it agreed to in that policy" (citation omitted)).[2]  But in *Bi-Economy*, the Court of Appeals "carved [out] a limited exception to that general rule." *Id.* at 350.

When considering an insurance policy that provided "business interruption coverage," the *Bi-Economy* court found that "the purpose of the contract was not just to receive money, but to receive it promptly." *Bi-Economy*, 10 N.Y.3d at 194-95, 886 N.E.2d at 131-32.  For that reason, the Court of Appeals found that consequential damages beyond the policy limits were available because the insurer breached the insurance contract by not promptly reimbursing its insured for covered damages.  The court explained that "limiting an insured's damages to the amount of the policy, i.e., money which should have been paid by the insurer in the first place, plus interest, does not place the insured in the position it would have been in had the contract been performed." *Id.* at 195; 886 N.E.2d at 131.  And the court noted that there is an "implied covenant of good faith and fair dealing" that is "implicit" in "all contracts," including "contracts of insurance." *Id.* at 194, 886 N.E. at 131.

---

[2] This Court refers readers curious about the evolution of consequential damages to the thorough history provided by the Southern District of New York in *Scottsdale*, 549 F. Supp. 3d at 349-55 (Liman, J.).

The *Panasia* court then explicitly incorporated the covenant of good faith and fair dealing into the law of consequential damages, holding that "consequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance contract context, so long as the damages were 'within the contemplation of the parties as the probable result of a breach at the time of or prior to contract." *Panasia*, 10 N.Y.3d at 203, 886 N.E.2d at 137 (quoting *Bi-Economy*, 10 N.Y.3d at 192, 886 N.E.2d at 130).  That standard—the standard articulated by the New York Court of Appeals—is the standard this Court applies.  *See Scottsdale*, 549 F. Supp. 3d at 351 ("Courts have . . . relied on *Bi-Economy* and *Panasia* to permit consequential damages where they have determined that damages alleged in excess of the policy limit were within the contemplation of the parties at the time of contracting." (collecting cases)).

Therefore, to recover consequential damages, the Lalimes must show that those damages (1) were reasonably contemplated by the parties when they executed the policy and (2) resulted from Travelers' breach of the covenant of good faith and fair dealing.[3]

---

[3] Travelers also argues—correctly—that "the factual allegations relied upon to support a consequential damages claim must be pled with specificity pursuant to [Federal Rule of Civil Procedure] 9(g)," Docket Item 15-7 at 8-9 (collecting cases), which provides that "[i]f an item of special damage is claimed, it must be specifically stated." "The primary purpose of Rule 9(g) is one of notice, both to inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the complaint."  *Nunes v. Cable News Network, Inc.*, 520 F. Supp. 3d 549, 560 (S.D.N.Y. 2021) (citation omitted), *aff'd*, 31 F.4th 135 (2d Cir. 2022).

The Court finds that the Lalimes' consequential damages claim related to the loss of use of their home as pleaded in the proposed second amended complaint—the only consequential damages claim that survives, *see infra* at 7-13—satisfies the requirements of Rule 9(g) because it gives Travelers and this Court notice of the specific consequential damages the Lalimes seek.  *See Nunes*, 520 F. Supp. 3d at 560-61.

## II. CONSEQUENTIAL DAMAGES CLAIMED BY THE LALIMES

The Lalimes say they are entitled to three categories of consequential damages as a result of Travelers' alleged breach of the policy.

First, because they allegedly could not "repair and/or replace their home" and "were forced to incur the costs of securing a new home[] while continuing to carry the costs of the [damaged] [p]roperty," the Lalimes seek consequential damages arising from the damage to the dwelling. Docket Item 12 at ¶ 42. Such damages include "the increased cost of financing [their] purchase of a new home[] and the continuing costs of paying for their previous home despite it being uninhabitable." *Id.*

Second, the Lalimes say that they could not "replace all of their personal property that was lost and/or damaged as a result of the [collapse]." *Id.* at ¶ 61. Therefore, they seek consequential damages related to their personal property, including "amounts over the [p]olicy's personal property limit . . . that have been or will be incurred" to replace their personal property. *Id.*

Finally, the Lalimes allegedly "were forced to incur the costs of securing temporary and then permanent replacement housing, together with other increased additional living expenses, including . . . increased costs of meals." *Id.* at ¶ 79. As a result, they seek consequential damages relating to the loss of use of their property, including "amounts over the [p]olicy's loss of use limit of coverage that have been incurred . . . to maintain [their] normal standard of living." *Id.*

## III. TRAVELERS' SECOND MOTION TO DISMISS

Travelers argues that because the Lalimes make only conclusory allegations of foreseeability and bad faith, they cannot pursue their consequential damages claims.

7

Docket Item 15-7.  The Lalimes respond that the allegations in the amended complaint are sufficient to withstand a motion to dismiss; in the alternative, they say that to the extent this Court finds otherwise, they should be allowed to amend their complaint a second time.  Docket Item 16-4; *see* Docket Item 16-3.

### A.      Reasonable Contemplation

"To determine whether consequential damages were reasonably contemplated by the parties, courts must look to the nature, purpose[,] and particular circumstances of the contract . . . as well as what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made."  *Bi-Economy*, 10 N.Y.3d at 193, 886 N.E.2d at 130) (citation and internal quotation marks omitted); *see Rensselaer Polytechnic Inst. v. Varian, Inc.*, 340 F. App'x 747, 750 (2d Cir. 2009) (summary order) ("As a general rule, special or consequential damages are not recoverable unless the party was on notice of those special damages at the time of contracting." (citation and internal quotation marks omitted)).  But "to satisfy this foreseeability requirement . . . , the policyholder need not point to an express contract provision or specific language permitting the recovery of consequential damages."  *Roman Cath. Diocese of Rockville Ctr. v. Gen. Reinsurance Corp.*, 2016 WL 5793996, at *5 (S.D.N.Y. Sept. 23, 2016) (citation and internal quotation marks omitted).  "Rather, . . . the commonsense rule . . . is to consider what the parties would have concluded had they considered the subject."  *Id.* (citation and internal quotation marks omitted).

For example, in *Woodworth v. Erie Insurance Co.*, 743 F. Supp. 2d 201 (W.D.N.Y. 2010), the plaintiffs had a homeowners insurance policy with a provision covering damages arising from loss of use of their home. *Id.* at 203. That section read:

> If an insured property loss makes your residence premises uninhabitable, we will pay all reasonable additional living expenses while you and members of your household reside elsewhere.
>
> Payment shall be for the shortest time required to repair or replace the premises or, if you choose, for you to permanently relocate. These payments will not exceed a 12[-]month period.

*Id.* After the plaintiffs' home was destroyed, a coverage dispute arose, preventing repair or replacement and causing the plaintiffs to incur additional living expenses beyond 12 months. *Id.* at 204-08. In addressing the plaintiffs' claims for consequential damages related to their living expenses, the court found that "the clear purpose of the insurance policy was to insure that [the p]laintiffs' house would be rebuilt or replaced promptly, and that in the meantime, [the p]laintiffs would not have to pay additional living expenses while the old house was uninhabitable." *Id.* at 217. And because there was a question of fact as to whether the insurer's breach caused a delay in replacing the house, the plaintiffs' claim for consequential damages beyond the policy's 12-month limit could survive summary judgment.[4] *Id.* at 217-18.

Here, Travelers may be correct that the amended complaint's allegations of reasonable foreseeability are wholly conclusory and therefore cannot alone raise a plausible inference that the parties reasonably contemplated consequential damages.

---

[4] Despite its conclusion that the plaintiffs' claims for living expenses beyond 12 months were not barred by the law governing consequential damages, the court "reluctant[ly]" dismissed those claims on a technicality related to an untimely motion to amend. *Woodworth*, 743 F. Supp. 2d at 218-19.

*See* Docket Item 15-7 at 9-11; *see also* Docket Item 12 at ¶¶ 40, 69, 77 ("It was reasonably foreseeable and contemplated by the parties . . . that the failure to promptly provide coverage . . . would negatively and adversely affect [the Lalimes] and their asserts."). But that analysis changes in light of the insurance policy itself, Docket Item 15-4, which includes a loss of use provision similar to the loss of use provision in *Woodworth*. It reads, in full:

> 1. Additional Living Expense. If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.
>
> Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

*Id.* at 15.

Like the policy in *Woodworth*, "the clear purpose of the [Lalimes'] insurance policy was to insure that [their] house would be rebuilt or replaced promptly, and that in the meantime, [they] would not have to pay additional living expenses while the old house was uninhabitable." *See Woodworth*, 743 F. Supp. 2d at 217. In other words, the language of the insurance policy itself suggests that the parties contemplated that the failure to promptly pay under the policy might result in consequential damages, including increased living expenses.[5] Indeed, if Travelers were allowed to wrongfully

---

[5] What is more, Travelers does not point to any provision in the policy specifically excluding coverage for consequential damages, *see* Docket Items 15-7 and 17, nor did the Court find any such provision in the policy itself, *see* Docket Item 15-4. *Cf. Petroterminal De Panama v. Houston Cas. Co.*, 659 F. App'x 46, 51 (2d Cir. 2016) (summary order) (finding that "claims for consequential loss are plainly not covered in light of [the policy's] exclusion of 'liability arising from delay, loss of market, or consequential loss therefrom.'" (alterations omitted)).

10

delay coverage indefinitely, there would be no limit to the Lalimes' consequential living expenses, which could continue to accrue for years or even decades.[6]  For that reason—and because reasonable foreseeability generally "is a factual issue," *Diocese of Rockville Ctr.*, 2016 WL 5793996, at *5—the Lalimes have adequately pleaded that the consequential damages related to the loss of use of their home were reasonably contemplated by the parties.

Their other consequential damages claims, however, do not fare as well.  First, the Lalimes' claim for consequential damages arising from damage to their dwelling is duplicative of their claim for consequential damages arising from the loss of use of the home.  *Compare* Docket Item 12 at ¶ 42 (asserting consequential damages claim for "the increased costs of financing [the Lalimes'] purchase of a new home[] and the continuing costs of paying for their previous home despite it being uninhabitable"), *with id.* at ¶ 79 (asserting consequential damages claim for "the costs of securing temporary and then permanent replacement housing, together with other increased additional living expenses").  The proposed second amended complaint does not change that analysis.  *See* Docket Item 16-3 at ¶¶ 54, 91.  The Lalimes' consequential damages

---

[6] Travelers argues that finding reasonable foreseeability here "would mean that virtually any standard homeowners' policy would contemplate consequential damages," making insurers "liable beyond the agreed limits in the event of a breach."  Docket Item 17 at 11.  Even if that is so, the Court disagrees with Travelers' contention, *id.*, that such an outcome is "non-sensical."  As the *Bi-Economy* court noted, "[a]n insured may . . . bargain for the peace of mind, or comfort, of knowing that it will be protected in the event of a catastrophe."  *Bi-Economy*, 10 N.Y.3d at 194, 886 N.E.2d at 131.  That peace of mind includes the knowledge that if an insurer breaches its duty to act in good faith by delaying payment, the insured will not be hung out to dry and forced to pay for the damages caused by that breach.

claim relating to the damage to their home therefore is dismissed because those damages are better characterized as arising from the loss of use of the home.

Second, nothing in the Lalimes' proposed second amended complaint, Docket Item 16-3, or the insurance policy itself, Docket Item 15-4, suggests that the parties contemplated consequential damages related to the Lalimes' personal property.  In fact, the proposed second amended complaint does not make clear exactly what kind of consequential damages the Lalimes seek related to their personal property; it seems that they seek only replacement of their personal property that was damaged in the collapse, *see* Docket Item 16-3 at ¶ 73, and that is not a consequential damage at all. The Lalimes' claim for consequential damages related to their personal property therefore is dismissed.

In sum, given the "nature, purpose[,] and particular circumstances" of the insurance policy at issue, *see Bi-Economy*, 10 N.Y.3d at 193, 886 N.E.2d at 130, the Court concludes that the Lalimes have plausibly alleged that the parties contemplated consequential damages related to the loss of use of their home but not to damage to the home or their personal property.

### B. Breach of the Covenant of Good Faith

Under the covenant of good faith and fair dealing, "a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims."  *Id.* at 194, 886 N.E. at 131 (citation omitted); *see Diocese of Rockville Ctr.*, 2016 WL 5793996, at *5 (finding that the complaint "adequately pleads the requisite bad faith breach of the implied covenant of good faith and fair dealing for [a] consequential damages claim in an insurance coverage dispute").

Travelers argues that the Lalimes "offer no factual allegations of bad faith." Docket Item 15-7 at 12; *see* Docket Item 17 at 8-10.  Indeed, the amended complaint's allegations that Travelers failed to act in good faith are conclusory.  *See* Docket Item 12 at ¶¶ 36, 55, 73.  But the proposed second amended complaint cures that deficiency, at least at this early stage:  It alleges that Travelers failed to act in good faith by delaying investigation into the collapse for several weeks and waiting more than three months after the collapse to deny the Lalimes' claim.  *See* Docket Item 16-3 at ¶¶ 26-35.  Whether those purported delays constitute a breach of the covenant of good faith is a question of fact that may be resolved against the Lalimes.  But when it is resolved in their favor—as it must be on a motion to dismiss under Rule 12(b)—the proposed second amended complaint adequately pleads that Travelers breached the covenant of good faith.

## **CONCLUSION**

For the reasons stated above, Travelers' first motion to dismiss, Docket Item 11, is DENIED as moot; Travelers' second motion to dismiss, Docket Item 15, is GRANTED in part and DENIED in part; and the Lalimes' motion to amend, Docket Item 16, is GRANTED in part and DENIED in part.

The Lalimes' consequential damages claims arising from the damage to their dwelling and their personal property are dismissed.  The Lalimes shall file a second amended complaint asserting a claim for consequential damages arising from the loss of use of their property within 21 days of the date of this order.  Travelers shall answer the second amended complaint within 21 days of the date it is filed.

SO ORDERED.

Dated: February 5, 2024
       Buffalo, New York

                                              */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE